IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANGELA ROSS, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-283-Y |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER | § | |
| OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I. STATEMENT OF THE CASE

Plaintiff Angela Ross ("Ross") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Ross applied for DIB and SSI on August 11, 2009, alleging that her disability began on January 10, 2008. (Tr. 140–50.)

After her application for benefits was denied initially and on reconsideration, Ross requested a hearing before an administrative law judge ("ALJ"). (Tr. 54–57, 79.) The ALJ held a hearing on November 30, 2010, and issued an unfavorable decision on January 5, 2011. (Tr. 14–29, 38–53.) The Appeals Council denied Ross' request for review, leaving the ALJ's

decision as the final decision of the Commissioner in her case. (Tr. 1–3.) Subsequently, Ross filed this civil action seeking judicial review of the ALJ's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (2013) (disability); 20 C.F.R. Pt. 416 (2013) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status

alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

Ross presents the following issues:

1.   Whether the ALJ's RFC finding was supported by substantial evidence; and

2.   Whether the ALJ properly considered and weighed all the medical opinions in the record.

(Pl.'s Br. 1.)

### IV.   ALJ DECISION

In his January 5, 2011 decision, the ALJ concluded that Ross was not disabled under the SSA.  (Tr. 17.)   In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above.  At step one, the ALJ found that Ross had not engaged in any substantial gainful activity since January 10, 2008, the alleged onset date of Ross' disability. (Tr. 19.)   At step two, the ALJ found that Ross suffered from the severe impairments of arthritis, hypertension, joint problems, weak bladder, mood disorder, and alcohol dependence. (Tr. 19.)  At step three, the ALJ found that Ross' impairments did not meet or equal the severity of any impairment contained in the Listing. (Tr. 20.)

The ALJ then found that Ross retained the RFC to perform light work, without any restrictions.  (Tr. 21.)   Next, at step four, the ALJ found that Ross could perform her past relevant work as a housekeeping cleaner. (Tr. 24.)  Thus, the ALJ concluded that Ross was not disabled and had not been disabled at any time through the date of decision.

# V.   DISCUSSION

## A.   Issue One: Is the ALJ's RFC finding supported by substantial evidence?

Ross argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to include Ross' nonexertional limitations—specifically, her postural, manipulative, and mental limitations.  (Pl.'s Br. 12.)  Nonexertional limitations are those imposed by an impairment and related symptoms that do not directly affect a claimant's ability to meet the strength demands of jobs (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling).  *See* 20 C.F.R. §§ 404.1569a(b)–(c), 416.969a(b)–(c).  Such nonexertional limitations include manipulative and postural limitations, which affect a claimant's ability to reach, handle, stoop, climb, crawl, or crouch.  *See id.*   §§ 404.1569a(c)(1)(vi), 416.969a(c)(1)(vi).  Nonexertional limitations also include mental limitations such as (1) difficulty functioning because the claimant is nervous, anxious, or depressed; (2) difficulty maintaining attention or concentrating; or (3) difficulty understanding or remembering detailed instructions.  *See id.* §§ 404.1569a(c)(1)(i)–(iii),  416.969a(c)(1)(i)–(iii).   Nonexertional limitations relating to stress and mental illness, as well as postural and manipulative impairments, can affect the ALJ's assessment of a claimant's RFC.  *See* SSR 85-15, 1985 WL 56857, at *6–7 (eff. Feb. 26, 1979).

In determining a claimant's RFC, the ALJ must thoroughly discuss and analyze the objective medical and other evidence in relation to the claimant's symptoms.  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Furthermore, the ALJ must resolve any inconsistencies in the record, explain why functional limitations can or cannot be reasonably accepted as consistent with medical or nonmedical evidence, and address any medical opinions contained in the record.  *Id.*; *Quintanilla v. Astrue*, 619 F. Supp. 2d 306, 322 (S.D. Tex. 2008).  The ALJ resolves evidentiary conflicts, not the courts.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

Only when there is a "conspicuous absence of credible choices or no contrary medical evidence" will the Court find that the substantial evidence standard has not been met. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotations omitted).

### 1.    Postural and Manipulative Limitations

First, Ross argues that the ALJ erred by failing to include postural and manipulative limitations in his assessment of Ross' RFC. (Pl.'s Br. 12, Reply 3.) In support, Ross points to the exam findings of consultative examiner John Hood, D.O. ("Dr. Hood"), including diminished range of motion in Ross' back, hips, knees, and ankles, as well as diminished grip strength bilaterally. (Tr. 299.) Ross also points to the report of consultative mental health examiner Gerald H. Stephenson, Ph.D. ("Dr. Stephenson"), which includes Dr. Stephenson's observation that Ross' "fine motor control appeared to be defective." (Tr. 303.) Ross claims that these medical records are consistent with her allegations of knee and foot pain on exertion, inability to sit for lengthy periods of time, trouble bending and stooping, and hand and wrist pain. (Pl.'s Br. 12.) Ross also points out that state agency medical consultant Randal Reid, M.D. ("Dr. Reid") opined that Ross could frequently climb but could only occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 326.) Dr. Reid also opined that the evidence did not establish any manipulative limitations. (Tr. 327.)

In his decision, the ALJ discussed Dr. Hood's consultative exam findings, including those mentioned above of diminished range of motion and diminished grip strength. (Tr. 22.) However, the ALJ also discussed other exam findings of Dr. Hood as follows:

> The claimant had a very slow gait and was unable to heel and toe walk. However, there did not appear to be any para-vertebral spasms or tenderness to the lumbosacral. There did not appear to be excessive lordosis, kyphosis or kyphoscoliosis. With regard to extremities, there did not appear to be muscle atrophy to the wrist or hand. A sensory exam revealed no evidence of any hyperesthesia to either upper or lower extremity. Motor exam was 5/5 in all flexion and extension of the upper and lower extremities. . . . The rotator cuffs appeared to be intact. The claimant was able to reach the back of the head with

6

both hands without difficulty. Muscle strength of the upper extremities is 5/5 equal and bilateral.

(Tr. 22.) The ALJ also noted that Ross completed a function report, stating that she participated in the following activities:

> [S]he prepares simple meals on a daily basis. She irons about twice a week. She dusts, washes dishes, and makes her bed. She goes shopping for food and clothes. She takes a walk, if it's a good day. She attends church, goes to her grandson's football games, and goes to the library on a regular basis.

(Tr. 24.) The ALJ concluded that Ross had "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Moreover, these activities demonstrate an ability to perform past relevant work." (Tr. 24.) The ALJ stated that he had considered the medical opinions in the record and that any differences between the state agency medical consultants' functional assessments and the ALJ's RFC assessment was "due in part to new evidence and testimony. However, in spite of the differing functional analyses, [the ALJ] concurs with the medical consultants that the claimant is not 'disabled.'" (Tr. 24) (citations omitted).

ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Further, any conflicts in the evidence, including medical opinions, are resolved by the ALJ, not the courts. *See Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000). As recounted above, the record contains conflicting evidence concerning the extent to which Ross' impairments affected her postural and manipulative functions. The Court finds that the ALJ properly reviewed and considered the evidence relating to Ross' postural and manipulative abilities, and the ALJ's rationale is supported by credible evidentiary choices among the medical evidence in the record and demonstrates the existence of substantial evidence supporting the ALJ's decision. *See Boyd*, 239 F.3d at 704. Because this Court may neither reweigh the evidence in the record nor substitute its

7

judgment for the Commissioner's, the Court finds that the ALJ did not err in deciding not to include any postural or manipulative limitations in his assessment of Ross' RFC. *See Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383.

### 2.     Mental Limitations

Next, Ross argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not include any mental limitations in the RFC assessment. Ross argues that the uncontroverted medical evidence establishes that the symptoms of her mental impairment resulted in functional limitations and, thus, the ALJ erred by failing to include any mental limitations in his assessment of Ross' RFC. (Pl.'s Br. 13.)

The ALJ evaluated Ross' mental impairments at step three and concluded that Ross had (1) mild restriction in activities of daily living; (2) moderate difficulties in social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation which have been of extended duration. (Tr. 20–21.) These findings led to the ALJ's conclusion that Ross' mental impairments did not meet or equal in severity to a mental impairment contained in the Listing. (Tr. 20.) In the discussion accompanying the ALJ's assessment of Ross' RFC, the ALJ reviewed the report of Dr. Stephenson, the consultative mental health examiner. The ALJ noted that Dr. Stephenson had assigned Ross a GAF score of 45, which indicated serious symptoms.[1] (Tr. 24.) The ALJ also observed that, "[h]owever, [Dr. Stephenson] gave a guarded prognosis. Dr. Stephenson found that the claimant would benefit from detoxification and undergo alcohol rehabilitation, as well as psychiatric intervention." (Tr. 24.) As Ross points out, Dr. Stephenson also noted that Ross "appear[ed] to be markedly forgetful and distractible. It is probable that she becomes sidetracked before completing many

---

[1] The Global Assessment of Functioning (GAF) scale rates psychological, social, and occupational functioning on a scale of 0 to 100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text rev.2000) [hereinafter "DSM–IV–TR"]. A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

tasks." (Tr. 305.) Dr. Stephenson observed that Ross' "thinking was very 'fuzzy.' It was difficult to keep her on topic." (Tr. 306.) With regard to Ross' concentration, Dr. Stephenson reported that Ross "followed two-step instructions but was confused by three-step instructions. She failed mental arithmetic." (Tr. 307.) Dr. Stephenson opined that Ross was incapable of managing her own affairs and that she was "probably unemployable at this time." (Tr. 308.)

The ALJ also discussed the opinion of state agency medical consultant Charles Lankford, Ph.D. ("Dr. Lankford"), in which Dr. Lankford noted that Ross had "issues with concentration but [was] able to complete the tasks." (Tr. 24, 322.) Dr. Lankford opined that Ross could understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in routine work setting. (Tr. 24, 334.) Again, the ALJ stated that he had considered the opinions of state agency medical consultants but that any differences between their functional assessments and the ALJ's RFC assessment was "due in part to new evidence and testimony." (Tr. 24.) The ALJ did not specifically explain his reasoning for discounting the mental health findings and opinions in the record other than to state that Ross had "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Moreover, these activities demonstrate an ability to perform past relevant work." (Tr. 24.)

As further evidence of her mental limitations, in addition to the opinions of Dr. Stephenson and Dr. Lankford, Ross points to Dr. Hood's consultative exam report. This report contains Dr. Hood's observation that Ross "appear[ed] somewhat confused and unsure of some of the questions" asked during the exam. (Tr. 298.) Ross also points generally to medical records submitted to the Appeals Council showing that she was hospitalized on two occasions due to symptoms of bipolar disorder, as well as treatment records from MHMR showing that she

9

had "significant functional impairment due to her mental disorders." (Pl.'s Br. 13.)  Finally, Ross complains that the ALJ himself found at step three that she had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace; yet despite these findings, the ALJ failed to include any mental limitations in her RFC.  (Pl.'s Br. 13.)  Ross argues that, in light of the medical evidence throughout the record relating to her functional limitations that are attributable to her mental impairments, the ALJ's refusal to include any limitations in the RFC assessment relating to attention, concentration, persistence, pace, or social functioning rendered his decision unsupported by substantial evidence and requires remand.  (Pl.'s Br. 12–15, Reply 6.)

The limitations identified in the ALJ's evaluation at step three "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.  The mental RFC assessment requires a more detailed analysis in which the ALJ itemizes the various functions in the Listing relating to adult mental disorders and expresses them in terms of work-related functions, including "the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *Id.* *4, 6.  In assessing a claimant's RFC, the ALJ must consider the limiting effects and restrictions imposed by all of the claimant's impairments, even those that are not severe.  20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p, 1996 WL 374184, at *5.

As for Ross' claimed limitations in attention, concentration, persistence, pace, and social functioning, both medical evidence in the record and the ALJ's own findings at step three showed that Ross was assessed with difficulties in these areas.  Even though the ALJ was required to consider the limiting effects and restrictions imposed by all of Ross' impairments

when assessing Ross' RFC, *see* 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p, 1996 WL 374184, at *5, the ALJ did not accommodate these mental limitations in Ross' RFC. Thus, the ALJ failed to apply the correct legal standards when he chose not to include any mental limitations despite the ALJ's own findings at step three that Ross suffered from restrictions in (1) activities of daily living, (2) social functioning, and (3) maintaining concentration, persistence, and pace. *See Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382; *Tusken v. Astrue*, No. 4:08-CV-657-A, 2010 WL 2891076, at *11–12 (N.D. Tex. May 25, 2010) (concluding that when ALJ found mild difficulty in social functioning and in maintaining concentration, persistence, and pace at step three but did not include any mental limitation in the RFC, the ALJ committed legal error because he assessed the claimant's RFC using an inappropriate legal standard), *adopted in* 2010 WL 2891075 (N.D. Tex. July 20, 2010).

Even if the ALJ erred in failing to include any mental limitations in his assessment of Ross' RFC, remand is not required unless the Court finds that Ross was harmed by the error. *See Bailey v. Astrue*, No. 4:08-CV-500-Y, 2009 WL 3614503, at *10 (N.D. Tex. Nov. 2, 2009) ("Violation of a regulation constitutes error and establishes a basis for reversal of the agency action and remand unless a reviewing court finds that the error is harmless.") (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Frank*, 326 F.3d at 622. The Commissioner argues that, even if the ALJ had included mental limitations in the RFC assessment, such limitations would not have precluded Ross' performing her past relevant work as a housekeeping cleaner. (Def.'s Br. 9.) The Court agrees.

At step 4, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564. Social Security Ruling ("SSR") 82-62 requires that when the ALJ has determined that a claimant retains the RFC to perform a past relevant job, the

decision must contain the following specific findings: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386, at *4 (Nov. 30, 1981). When determining whether a claimant retains the RFC to perform her past relevant work, the ALJ can look to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional demands and job duties of the occupation as generally required by employees throughout the national economy. SSR 82-61, 1982 WL 31387, at *1–2 (Nov. 30, 1981).

Here, the ALJ called a vocational expert ("VE") to testify at the hearing and asked the VE if she had sufficient information to describe Ross' past work. The VE responded that she did, and she testified that Ross' past work included "housekeeping cleaner," classified under DOT code 323.687-014.[2] (Tr. 52.) The ALJ included this testimony in his decision and also noted that Ross' work history showed that Ross had previously worked in two jobs as a housekeeping cleaner. (Tr. 24.) The ALJ noted Ross' self-report to the SSA that "[i]n this position, [Ross] . . . would make beds, vacuum, and clean bathrooms," and that she would frequently lift up to ten pounds. (Tr. 24.) The Work History Report that Ross submitted to the SSA did not indicate any specific mental requirements imposed by her previous work as a housekeeping cleaner.[3] (Tr. 173–80.) As described in the DOT, the occupation of housekeeping cleaner requires a specific vocational preparation ("SVP") level of 2 and a reasoning level of 1.[4] DOT, *supra*, at 323.687-014.

---

[2] 1 Employment and Training Administration, U.S. Dep't of Labor, *Cleaner, Housekeeping*, Dictionary of Occupational Titles 323.687-014 (4th ed., rev. 1991) [hereinafter DOT], *available at* DICOT 323.687-014 (Westlaw).

[3] Specifically, Ross described her previous housekeeping jobs as follows: "Make bed – clean up bathroom – mop one small room – vac [sic] room." (Tr. 174–75.)

[4] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DOT, *supra*, app. C, 1991 WL 688702. Level 2 is in the class of unskilled work, *see* SSR 00-4p, 2000 WL

Ross argues that her mental limitations included problems with attention, concentration, persistence, pace, and social interaction, and that these limitations should have been included in her RFC. (Reply 6.) In support of her claim that limitations relating to attention, concentration, persistence, and pace should have been included in the RFC assessment, Ross points to Dr. Stephenson's observations at the consultative examination that Ross "appear[ed] to be markedly forgetful and distractible," that her "thinking was very 'fuzzy,'" that it was "difficult to keep her on topic," and that she probably "becomes sidetracked before completing many tasks." (Tr. 305.) Ross also points to the opinion of Dr. Lankford, the state agency medical consultant, in which he concluded that Ross had some moderate limitations in sustaining concentration and persistence as well as marked limitations in the ability to understand, remember, and carry out detailed instructions. (Tr. 332.) Again, however, Dr. Lankford ultimately opined that Ross could understand, remember, and carry out simple instructions and make simple decisions; furthermore, Dr. Lankford opined that Ross could attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to changes in routine work settings.[5] (Tr. 334.)

Except for Dr. Lankford's conclusion that Ross was markedly limited in the ability to understand, remember, and carry out detailed instructions, Ross points to no other medical evidence in the record showing that she suffered anything more than moderate work-related

---

1898704, at *3 (Dec. 4, 2000), and is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. §§ 404.1568(a), 416.968(a). A reasoning development level of one requires a person to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, *supra*, app. C, 1991 WL 688702.

[5] In addition, Ross cites to medical records provided to the Appeals Council as evidence of her mental limitations, including a November 24, 2010 MHMR assessment form stating that Ross' "functional impairment" was "significant." (Tr. 552.) However, this form was completed by a MHMR staff member, not a physician, and contains no further details on Ross' functional abilities. Ross also generally points to medical records showing that she was briefly hospitalized for symptoms of bipolar disorder in November 2010 and January 2011, but she does not explain how these records show any further functional limitations. Indeed, upon discharge, she was assessed with higher GAF scores of 55–60, indicating "moderate" symptoms. (Tr. 496, 511.) DSM–IV–TR, *supra*, at 34.

limitations related to her mental impairments. With regard to her claimed problems in maintaining attention, concentration, persistence, and pace, the Court notes that Ross' previous work as a housekeeping cleaner is unskilled work that, by definition, requires "little or no judgment" and only "simple duties." 20 C.F.R. §§ 404.1568(a), 416.968(a). It involves only "simple one- or two-step instructions" and "standardized situations" with very little changes in routine job situations. DOT, *supra*, app. C, 1991 WL 688702. Accordingly, even assuming that Ross faced moderate to marked limitation in attention, concentration, persistence, and pace that should have been reflected in the RFC, this limitation would not preclude her from performing the "simple" requirements of her previous work as a housekeeping cleaner. *See Jackson v. Astrue*, No. 4:11-CV-028-Y, 2011 WL 4943547, at *8 (N.D. Tex. Aug. 23, 2011) (concluding that a claimant's marked limitation in concentration, persistence, and pace was not inherently contradictory with the finding that he was able to perform work involving only simple tasks), *adopted in* 2011 WL 4940998 (N.D. Tex. Oct 17, 2011); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."), *adopted in* 2010 WL 3658996 (N.D. Tex. Sept. 17, 2010); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (concluding that the ALJ's finding that the claimant had moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could perform work that did not require her to understand, remember and carry out anything more than simple instructions); *Adams v. Astrue*, No. CV07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL

4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[The claimant] has not demonstrated that a restriction to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace.").[6]

"Work that is simple would most likely not require an abundance of concentration, persistence, or pace." *Jackson*, 2011 WL 4943547, at *9.  Furthermore, nothing in Ross' own description of her previous work as a housekeeping cleaner or in the DOT's occupational description of a housekeeping cleaner indicates any apparent requirement for attention, concentration, persistence or pace of any significant degree.  Therefore, the Court finds that, due to the nature of Ross' previous work and the abilities required, any failure by the ALJ to include a mental limitation in the RFC relating to attention, concentration, persistence, or pace is harmless.

By the same reasoning, any failure by the ALJ to include a mental limitation in the RFC relating to Ross' difficulties in social functioning is similarly harmless because nothing in the requirements of the housekeeping cleaner occupation, either as described by Ross or as described by the DOT, involves any significant degree of interacting with others.  In fact, with regard to the category of "People," the DOT states that the housekeeping cleaner occupation involves "Taking Instructions–Helping" but that this function is "not significant."  DOT, *supra*, at 323.687-014.  Thus, it is inconceivable that a different administrative conclusion on the issue of Ross' ability to perform her past relevant work would have been reached absent the ALJ's error in failing to

---

[6] Furthermore, a job that requires an RDL of two is not necessarily inconsistent with the ability to perform only simple, routine work tasks. *See, e.g.*, *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 613–14 (E.D. Tex. 2009); *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009); *Dugas v. Astrue*, No. 1:07-CV-605, 2009 WL 1780121, at *6 (E.D.Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams*, 2008 WL 2812835, at *3 ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks.").  The housekeeping cleaner job requires only an RDL of one, which is even simpler than an RDL of two.

include mental limitations supported by the evidence in Ross' RFC. *See Frank*, 326 F.3d at 622. Because Ross was not harmed by the ALJ's error in assessing her RFC, remand on Ross' first issue is not required. *See id.*; *Bailey*, 2009 WL 3614503, at *10.

### B.     Issue Two: Did the ALJ Properly Consider and Weigh All the Medical Opinions in the Record?

In her second issue, Ross argues that the ALJ erred by failing to properly weigh the medical opinions in the record, including the opinions of consultative examiners Dr. Hood and Dr. Stephenson and the opinions of the state agency medical consultants. (Pl.'s Br. 15–16.)  In the decision, the ALJ recognized that he "must consider any medical opinions, which are statements from acceptable medical sources, reflecting judgments about the nature and severity of the impairments and resulting limitations." (Tr. 24.)  The ALJ went on to state that any differences between the state agency medical consultants' functional assessments and the ALJ's RFC assessment were "due in part to new evidence and testimony." (Tr. 24.)  The ALJ did not specifically explain his reasoning for discounting the opinions in the record other than to state that Ross had "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Moreover, these activities demonstrate an ability to perform past relevant work." (Tr. 24.)

The ALJ was required to articulate the weight given to the medical opinions in the record. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (stating that, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources").  The ALJ therefore erred to the extent that his decision did not sufficiently explain the reasons for failing to include the nonexertional limitations suggested

by the medical opinions in the record. *See Hammond v. Barnhart*, 124 Fed. App'x 847, 851 (5th Cir. 2005); *Andrews v. Astrue*, 917 F. Supp. 2d 624, 638 (N.D. Tex. 2013).

However, as discussed in Part V.A.1., *supra*, the Court's review of the record reveals the existence of substantial evidence supporting the ALJ's decision not to include any postural or manipulative limitations in the RFC assessment. Accordingly, any error by the ALJ in not explicitly delineating in his decision the factors listed in sections 404.1527(c) and 416.927(c) is harmless. *See Frank*, 326 F.3d at 622; *see also Hammond*, 124 Fed. App'x at 851–52 (stating that the ALJ, in evaluating medical opinions to determine the effects of a claimant's impairment on the ability to work, "likely made the same fact-based judgments that form the basis of [the court's] refusal to overturn his decision on substantial evidence review"); *Andrews*, 917 F. Supp. 2d at 638. Furthermore, as discussed in Part V.A.2., *supra*, any error in the ALJ's failure to properly weigh or sufficiently explain his reasons for not including the mental limitations suggested by the medical opinions in the record is harmless because it is inconceivable that a different administrative conclusion on the issue of disability would have been reached absent the error. *See Frank*, 326 F.3d at 622. Because Ross was not harmed by any error that the ALJ committed in weighing the medical opinions in the record, remand on Ross' second issue is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the

party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until ~~August~~ September 2, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 19, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE